Good morning, Your Honors. My name is Heidi Lynn Lambrose for Defendant Appellant Devin Reed Good morning, Your Honors. My name is Heidi Lynn Lambrose from the Office of the State Appellate Defender representing Devin Reed. Mr. Reed raised two arguable claims of ineffective assistance of appellate counsel in his pro se post-conviction petition requiring that his petition be advanced for second stage proceedings under the Act. The first argument that Mr. Reed raised was ineffective for failing to raise trial counsel's ineffectiveness, for failing to challenge his oral statement in a motion to suppress because he was not given his proper Miranda rights, he invoked his right to remain silent, and he was subsequently interrogated. His second claim Mr. Reed raised was that direct appeal counsel was ineffective for failing to argue that Mr. Reed was not eligible for the death penalty, not eligible for his court requested that the parties submit a memorandum of law regarding the supplemental authority of People v. Thomas. Since I believe that might be dispositive of the substantive issues in the case, I'd like to start by addressing how People v. Thomas is directly applicable to Mr. Reed's case. And People v. Thomas on the second district kind of gave us a little test for determining when claims in a pro se petition and claims in an appellate brief are shown to be properly tailored. In the Thomas case, the defendant was charged with a shooting murder. And I'm not going to go elaborate into the facts of this because of course this court knows. And there was another individual, another minor who had confessed to a chaplain and to a police officer. The trial court barred that evidence of that other confession to be coming into this trial. On direct appeal, no argument was made regarding that. In his pro se post-conviction petition, the defendant challenged that trial counsel was ineffective for failing to advance that another person had actually confessed to the crime. On appeal, appellate counsel tailored that argument to that appellate counsel was ineffective for failing to challenge under the chaplains, the barring of the chaplains' confession under the act. Much like the state is making right now, the state had argued that the issue was forfeited because it specifically and literally was not in the pro se post-conviction petition. But the second district said since the subject matter of the claim was the same, meaning that we're talking about a confession that was not introduced, evidence not introduced, since the two parties involved, the error was the same, meaning both the petition and the appeal alleged appellate counsel's ineffectiveness, and because the factual allegations were the same, Hodges was met, and that the petition was, the claim was not forfeited. So in Thomas, are you asserting that there was sufficient detail for the court to consider in the petition? The factual allegations provided appellate counsel with sufficient detail in order to raise it on appeal. Now what about in this case? Do we have sufficient detail to provide us with information as to what was the basis? I think we do. What is that detail? Regarding the first claim, Mr. Reed specifically put in his petition that his confession should have been suppressed. And he also made an argument related to how he invoked his right to Miranda with A.S.A. Chung, a completely different state's attorney, and his right was not respected. He also made several references, you know, to the fact that counsel's ineffective. He told counsel he wanted to suppress his confession, and counsel didn't move to that point. And by which counsel are we referring to here? Trial counsel. Trial counsel. And then he also made a claim about the appellate counsel, right? Yes. And then he also, by reference, made a claim about ineffective assistance of appellate counsel, saying that direct appeal counsel, he spoke with her, he wanted a motion to suppress her. Is that in the petition? Yes, it is in the petition. That he spoke with the appellate counsel? Yes, he actually attached Ms. Bissell, a colleague of mine's, a letter that Ms. Bissell wrote him referencing a conversation that the two of them had where she said, I'm not going to be raising any issues regarding your motion to suppress. And in fact, Judge Porter, when he denied Mr. Reed's petition, he actually mentioned Ms. Bissell's letter when he was saying that Mr. Reed didn't make a sufficient claim of ineffective assistance of appellate counsel. He said, well, I can see this letter, and Ms. Bissell said, I'm not going to raise any motions to suppress arguments. So Judge Porter obviously had reviewed the claim, which is what we want a judge to be able to do, that Mr. Reed had alleged that his trial counsel was ineffective, and therefore, direct appeal counsel should have alleged that he was ineffective. So I believe that's, even beyond the four corners of the document, we have Judge Porter referencing it, we have the client many times referencing it, and we also have him saying, appellate counsel should have actually renewed all of my motions, my pro se motions, he made five motions, that I made before the trial court during my trial. And one of those motions, again, was exactly what he argued in his pro se petition, which is that counsel should have moved to suppress his confession based on Miranda grounds. Regarding the second issue, again, he alleged that appellate counsel was ineffective for failing to renew all the claims he made in his pro se motions. One of the motions was that he was not eligible for the death penalty, and then he was not eligible for a natural life sentence, and then he should have been sentenced to 20 to 60 years. That was a pro se motion that he made. Again, he requested in his PC that appellate counsel renew all those motions. Ms. Bissell, although she did make an argument regarding some form of his sentence, did not make any argument regarding his natural life sentence, his ineligibility for the death penalty. And we can also know that Judge Porter actually reviewed some claims regarding to his sentence, because Judge Porter makes a reference in his dismissal of the order regarding appellate counsel, that client made no, Mr. Reed made no arguments that would actually lead to his conviction or his sentence being reversed. So obviously, Judge Porter, who was the original trial court judge, made some sort of investigation from the claims into Mr. Reed's argument, not just regarding his sentence, but also regarding his conviction. So because of that, we're arguing that this issue is actually not forfeited, that he presented it quite clearly in his PC. He incorporated it by reference, as this court and the Illinois Supreme Court has noted. The common law record on direct appeal is part of the PC record, and the judge who's reviewing the claims, and that's what we want. We want to make sure that the trial court judge who's reviewing PC claims has enough information in front of it to look around and say, this claim, this claim, this claim, and that's exactly what Judge Porter did here. If there's no other arguments regarding the forfeiture issue, I'd like to move on to the substantive claims. Mr. Reed argued that trial counsel should have moved to suppress his confession, because he invoked his Miranda rights to an assistant state's attorney named A.S.A. Mr. Chung was the A.S.A. who actually approved the charges against Mr. Reed. We really don't know what happened to Mr. Chung. We don't know when he spoke to the defendant, how he spoke to them, or in what manner. But Mr. Reed told his trial counsel that I invoked my rights to Miranda, and then I subsequently gave a confession that violated my Miranda rights because I requested to remain silent. And that, again, is presented in the record. So Mr. Reed did state an arguable claim that trial counsel was ineffective for failing to raise this issue that he had presented fully down below, and failing to move to suppress his oral statement, which was the basis of essentially the corroboration of the entire case. There was one witness who was, for lack of a better word, not the most credible witness, and his confession. So Mr. Reed argued that he made an arguable claim that trial counsel was ineffective for failing to raise the issue of his suppression of his oral statement. There's no other questions regarding the first claim. Regarding the second claim, Mr. Reed also raised an argument that his, as we know, he's required to be resentenced to a term of between 20 and 60 years because he was not eligible for the death penalty, and thus not eligible for a natural life sentence, so he should be resentenced to between 20 and 60 years. What's odd about this claim is before this court on direct appeal, this court found that the trial court erred by not submitting an instruction to the jury regarding different verdict forms for knowing an intentional murder and felony murder. We already have this error. The problem is that a direct appeal counsel didn't extend Smith to its logical conclusion and argued that the sentence, the natural life sentence, was unauthorized by law. We know from the Illinois Supreme Court case of People v. Bailey that Mr. Reed is currently serving an unauthorized illegal sentence as he was not eligible for the death penalty based on his now being acquitted of intentional or knowing murder. So regardless of the forfeiture issue, Mr. Reed also argued that this error renders the sentence void, requiring it to go back for second stage proceedings, and ultimately for him to be resentenced to between 20 and 60 years in prison. I have a question regarding the jury's decision here. Should we take that into consideration? The jury's decision on the armed robbery? The armed robbery, he was charged with armed robbery, brutal and heinous. The jury wasn't instructed about making the murder brutal and heinous. And as we know, the judge did not make him eligible for a natural life sentence based on anything other than his death penalty eligibility. Mr. Reed filed his pro se motion for reconsideration. Judge Porter said, I found you eligible for a natural life sentence because I found you eligible under the B6 aggravating factor. And that's the reason why he has a natural life sentence. Again, no instructions were submitted to the jury about brutal and heinous. Mr. Reed wasn't in the room when the, for lack of a better word, the final blow was delivered. So it's entirely possible that the state didn't want to submit a brutal and heinous instruction. And people be Smith and people be Bailey tell us there is no harmless error analysis. This court can't actually review the record now and assert that there was actually, the murder was accompanied by brutal and heinous indicative of one cruelty. So the answer to my question is, should we take the jury's decision and consideration in this case? No. The jury's consideration regarding the armed robbery is that the armed robbery was brutal and heinous. But by operation of the Smith error, Mr. Reed has been acquitted of intentional unknowing murder. So because of that, he is only standing convicted of felony murder, which means he was not eligible for the natural life sentence. And should trial counsel have been aware of the Smith decision? Trial counsel actually requested the verdict form. So trial counsel did everything that trial counsel should do, which is asking that the jury receive and be able to render judgment on intentional unknowing murder or felony murder and was rejected by the judge. This court actually found a Smith error. So back in 2010, went on direct appeal and vacated the underlying felony murder convictions. The fact is that direct appeal counsel didn't do what Smith tells us to do, which is advance the argument that the Bailey remedy, for lack of a better word, that Mr. Reed was entitled to, which is also a vacation of his natural life sentence. The state doesn't dispute that. Should trial counsel have known about that, about that next step? Because Bailey hadn't been decided yet, had it? Bailey hadn't been decided, no. Trial counsel did everything trial counsel would do. The error occurred the moment that the jury wasn't properly instructed. So when the jury went back and wasn't given those differences between felony murder on one hand and intentional unknowing murder, that was the error. There was nothing that trial counsel could have argued at that point. Appellate counsel was in the position of making the argument that not only must these underlying convictions be vacated, but the natural life sentence. I'm sorry, but what position was appellate counsel in with regard to the state of the law at that time? Appellate counsel, we had Smith. And if you read Smith in 2009, Smith says and predicts and gives an example of the death penalty circumstance. Smith says, here's an example of how different verdict forms would affect different sentencing consequences. One in the strict Smith-Titus sense, and the second in what would turn out to be the Bailey case in a death penalty hearing. Is that in the petition? In terms of appellate counsel's ineffectiveness? What was in the petition was appellate counsel- Was that in the petition? No, the actual literal form of the Bailey issue was not in the petition. All right, now what about Jones? Should we follow Jones in that regard? Because doesn't Jones say that we should, there should be at least some type of assertion, some type of statement with regards to the ineffectiveness? Well, this court can reconcile Jones with what we have in these pleadings. Mr. Reid did allege that appellate counsel should have argued all of his pro se motions that were contained in the common law record. And one of them was Mr. Reid saying, I'm not eligible for the death penalty. I wasn't eligible for a natural life sentence. He had the exact same facts that appellate counsel myself used in crafting the argument before this court. Again, the bones of the argument are in the petition. Which is, I'm not eligible for the death penalty, I'm not eligible for my sentence, and I should be resentenced. So if you throw it up against the wall, something sticks, then appellate counsel should be responsible for what was asserted in the post-trial motions and then argue those? I think it's a little bit more than throwing it against the wall. I think appellate counsel had a duty to review- Well, you just said that if it's in the post-trial motions, then appellate counsel has a responsibility or an obligation to argue it. When the client actually says counsel is ineffective for failing to renew my post-trial motions, in this case, the defendant specifically said Ms. Bissell did not advance the claims that I told her to in my pro se post-trial motions. He doesn't have a copy of the common law record, so he just can't- Who doesn't have a copy? The defendant. So he was referencing what was already in the common law record, which he's allowed to do, which hanks. And people be more tell us the common law record is part of the record on post-conviction proceedings. But again, doesn't Jones say that you have to at least give a bare assertion of what the ineffectiveness is? Do we have a bare assertion here in terms of what the ineffectiveness was? We have a bare assertion that counsel's ineffective for not renewing that Mr. Reed's sentence was unconstitutional and he was not eligible for it. And Jones, remember, all the defendant did was include a pre-printed form. And he wrote in just six and just a couple of things. There was no facts in the Jones petition. There was nothing in there that even said even a bones of an argument. Here we have the same factual allegations that counsel could have rendered, could have looked at the pro se motion. And by the way, Judge Porter didn't, for some reason, mention sentence. So obviously, Judge Porter reviewed a portion of the defendant's sentence when he was reviewing his pro se post-conviction petition. Although I believe that there's, Mr. Reed did everything sufficient to bring this claim before this court and before the trial court. Again, as we argue, by operation of Smith and Bailey, his conviction is void. His sentence is void. So regardless- Are you arguing voidness? Are you arguing, what's the vehicle for relief that you're asking for? Are you asking for us to say that it's a void sentence? Or are you asking us to say that appellate counsel is ineffective? Appellate counsel is ineffective, but regardless, the sentence is still void. It's still unauthorized by law. So I don't believe that this is forfeited. I think Mr. Reed did everything he was supposed to do. No. Wasn't it authorized by law at the time? No, it was not authorized by law at the time. Smith tells us that it was never authorized by law. The Bailey decision isn't the new law. The new law was Smith in 2009. That's when the error, that's when the Illinois Supreme Court addressed the error. And the Illinois Supreme Court and Bailey said, actually, in 1980 and 1981, and back in Burlington is when this error occurred. So this isn't a question of retroactivity. All Bailey did was say, yes, the remedy for a Smith violation, which the Illinois Supreme Court decided in 2009, under the death penalty circumstance of this, exactly how Mr. Reed has it, where he was eligible for the natural life sentence because of his B6 eligibility. The remedy for that violation is that he has been acquitted of intentional unknowing murder, and he should be re-sentenced to 20 to 60 years. That's specifically what the Illinois Supreme Court said. So all I'm asking this court to do is just- But there's that extra little issue about, which was the reason for the Bailey decision, and that is, does this apply to a bench hearing on the death penalty? So I mean, how do you put appellate counsel in a position that appellate counsel should have known that the Supreme Court was going to apply this Smith logic to a bench hearing? Well, appellate counsel absolutely should have known. One, in Smith and Titus, the judge was the actual sentencer. So it's always been a judge who's been the sentencer. As far as the argument that it was kind of up in the air whether or not a bench death penalty eligibility, the Bailey court said, no, that was never up in the air. Because Beck and Bullington from the 1980s rendered the judgment an acquittal. So it has nothing to do with whether the sentencer is the judge or the jury. Mr. Reed, as was Mr. Bailey, has been acquitted of intentional unknowing murder. So irrespective of who is going to be sentencing them, neither one of these men, Mr. Reed or Mr. Bailey, should have even gone to a death penalty eligibility hearing, because they were, in fact, acquitted of intentional unknowing murder. And around the time that this Reed case was percolating, the Bailey issue was already being raised before the appellate court. Yes, it lost, but it was still an arguable claim to make. And the appellate counsel already raised a portion of the Smith issue. If they would have read it a little bit more carefully, they would have said that, oh, look it, the Illinois Supreme Court's predicting that in the death penalty context, this Smith rule is going to apply. And it's going to lead to different sentencing consequences. But appellate counsel didn't. So regardless of whether or not it was a winning issue back at the time, appellate counsel should have at least advanced the argument and made the argument. But again, regardless of whether this court finds that it's maybe strictly forfeited, by offer of the Smith error renders Mr. Reed's conviction, his sentence, void. Requiring that he be re-sentenced to a term between 20 and 60 years. If there's no further, I will raise a couple minutes in rebuttal. Thank you. Thank you, Ms. Lampros. Again, may it please the court, I am Assistant State's Attorney Tasha Marie Kelly. Briefly, I would like to thank the court and counsel for accommodating me by rescheduling this argument. Thank you very much. For getting you out of election duty. Did that have anything to do with your motion? I don't remember your motion, but that's okay. First, your honors, in terms of the Thomas decision, which this court asked us for supplemental briefing on. Just to clarify a couple of points in terms of the forfeiture, as to both issues, the ineffectiveness issue and the Smith-Bailey issue. The specific claim of ineffectiveness before this court has to do with appellate counsel. And specifically, appellate counsel's ineffectiveness for failing to raise trial counsel's ineffectiveness for not filing a motion to suppress based on the alleged invocation. And that claim simply does not appear in the pro se petition. There are three sections to the pro se petition. There's a very specific ineffective assistance of trial counsel. There's a very specific trial court error. And there's a very specific appellate counsel ineffectiveness. The claim that's before this court is discussed in the trial counsel ineffectiveness portion. In the appellate court ineffectiveness portion, it doesn't appear anywhere. And interestingly, there is a claim of ineffectiveness of appellate counsel for failing to raise trial counsel's ineffectiveness regarding a motion to suppress. But it's on an entirely different issue, which indicates that this defendant made the specific choice not to raise the issue of appellate counsel's alleged ineffectiveness on this issue. He certainly could have raised it. He talks about trial counsel's alleged ineffectiveness. How do we know that he decided not to raise it? Because it's absent from the petition. The appellate counsel's ineffectiveness portion of this petition has six to eight very specific claims in it. The trial counsel's ineffectiveness portion has, again, six to eight very specific claims in it, and some of them are repeated between the two. But this one isn't. If we look at what the Thomas decision tells us, and the cases that are cited within Thomas, and specifically I would cite to the Cole decision, which the Thomas court talks about. In Cole, in the pro se petition, the defendant raised claims of trial error. These were errors that occurred at my trial. In his post-conviction petition, he raised claims that appellate counsel was ineffective for failing to raise these claims of error that occurred. And what the reviewing court, this court, the first district said was, there's a huge difference between talking about errors that occurred and talking about them in terms of appellate counsel. And you're talking about different parties when you're talking about the court, and you're talking about appellate counsel. And it distinguished the situation before it in Thomas by saying, in Thomas, we're talking about appellate counsel's errors. So, but in Cole, doesn't the dissent say that if you mention counsel, that you're referring to both appellate counsel and trial counsel? When you're talking about the same substantive issue. In this case, we're not talking about the same substantive issue, and we're also not talking about the same parties. And the court does talk about that in Thomas, and part of what it rested its decision on is the fact that the party who was being accused of the ineffectiveness in both situations was appellate counsel. That's not the situation here. We have trial counsel and we have appellate counsel. And it's very clear that the allegation that's made in the pro se petition is substantively different from the allegation that's made in the appeal, where it's appellate counsel. So as long as the petition indicates that it is appellate counsel, if the substantive issue or the substantive matter is vague, have they satisfied the rule with regards to a proper petition in a post conviction hearing? Well, you would still have to fulfill the other requirements. So you would still have to set forth whatever burden is required of you, be it a substantive showing of a constitutional deprivation, a showing that your petition is not frivolous or patently without merit. You would have to set forth some sort of evidence in support of your claims, whether it be affidavits, whether it be trial transcripts, or something else. So would the allegation on its face, just because it's the same party, be sufficient to fulfill the requirement? No, it would not. So should we follow the Cole decision, where the court indicated that as long as it's implicit in the claim, is that sufficient? As long as the- The assertions that counsel was ineffective. As long as they're implicit in the claim, I mean, do we have to read between the lines? Or does it have to be clearly set forth as the court in Mars stated? Well, I believe that what the Cole court was saying was implicit in the claim, where the claim itself is setting forth sufficient detail. So, for instance, you can look at the claim and know what the claim is about, whether it be an invocation of a right or the claim that was made here in the petition against appellate counsel had to do with whether the actual confession that was put in was hearsay. But in this case, either way, when you look at either the claim against trial counsel or the claim against appellate counsel, that's not included with enough detail to set forth a showing in this case. I'll ask you what I asked counsel. Do we have enough detail in this case? In the pro se petition? In Mr. Reed's petition. Do we have enough detail here to consider the petition having fully asserted in compliance with the act? For the allegation against trial counsel? No, against appellate counsel. Well, the allegation against appellate counsel doesn't even appear in the pro se petition. But the argument on the other side is that it does. That it's implicit in the petition. I believe that her argument is because she made the allegation against trial counsel that you can and that is sufficient to preserve a claim against appellate counsel. So are we back at Cole in the dissent where Cole says as long as you make the assertion, it doesn't matter if it's trial counsel or appellate counsel, refer to counsel? Well, I believe that Cole, the actual decision in Cole has to do with the allegations being made against the same parties. Right, but what I'm referring to is the dissent in Cole. And the dissent in Cole is that it doesn't, as long as the term counsel, so to speak, is referred to or is mentioned in the petition, that's sufficient. But of course that was not the actual holding of the case. No, that's not the holding. But I'm just asking. Obviously I would urge this court to follow the actual holding of the case, which indicates that the allegation needs to be made against the actual party. What about this argument that there was this general kind of catch-all statement in the petition that said, you know, my appellate counsel should have raised all the claims I raised below. Is there a problem with that? Yes. The actual statement that's contained in the petition is that appellate counsel was ineffective for failing to renew post-trial motions. And then the defendant specifically refers to two post-trial motions, the motion for a new trial and the motion for appointment of counsel, neither of which is the motion that the defendant is relying on here, which was the motion for reconsideration of the sentence. So if you actually look within the post-conviction pleading itself, there is no mention at any point in that petition of the fact that his sentence is illegal, the Smith-Titus issue, that his natural life sentence is excessive. There's absolutely no claim at all in there in regards to a sentence. And so what the defendant is doing now here is taking that one line and trying to expand that, not only to include a motion that's not included in the actual claim, but then to take that even further and ask the court to interpret the claim that is contained within the motion to reconsider a sentence into something that it wasn't. Okay. Well, let's get to Smith and Bailey. Okay? Counsel says that we need to take some action because Mr. Reid is serving a void sentence. We're supposed to do something about void sentences. So what should we do about that? Well, I would answer that in two ways. First of all, this is not Darius Bailey. The problem in Darius Bailey was that when you interpreted the jury's verdict as a verdict of felony murder, the sentence that was imposed of natural life had no valid basis. Because what the court said was that you had to interpret that finding of felony murder as an implied acquittal on the other two forms of murder. And so since the basis in Darius Bailey for the eligibility for the death penalty and natural life was that the murder was committed during the course of a felony, that valid basis was gone based on the decision. What about counsel's argument that appellate counsel should have anticipated Bailey, that what the Supreme Court was going to say in Bailey was coming down the pike? Well, if you look at the fact that shortly after the direct appeal in this case was decided, this court came out with the appellate decision in People v. Bailey and faced this very issue and found, in fact, that the defendant's natural life sentence was valid, it seems difficult to argue that counsel should have anticipated and would have been successful on that same argument, considering the fact that this very court decided against the argument in ruling in the appellate court Bailey. And while that decision was later overturned by the Supreme Court, the fact is that the analysis by this court would have rejected the very argument that counsel says appellate counsel was ineffective for not making. All right. I want to take it back to you were saying you had two ways to answer my question. There are. And the first way is that this is not the Bailey situation. That's correct. Because why? Because. It's not a felony of mercy. Because in this case. Not aggravating by way of course of a forceful felony. Because in this case there is a valid basis for the natural life sentence, notwithstanding the error. So 8181B allows for an extended sentence of natural life in those cases where there's a finding by the trier of fact that the murder was committed in a brutal or heinous fashion indicative of wanton cruelty. And in this case we have two different places in the record which would The first one of course is the finding that was made by the jury in regards to the armed robbery. And of course I recognize that it was not made in terms of the murder. But I would say to this court that we obviously would not have asked for that finding in terms of the murder because the only two sentences that were available to the court at that time would have been death or natural life. So there would have been no reason for us to ask for the additional finding of But if you look at the facts of this case, the armed robbery and the murder were inextricably intertwined. The facts are that the victim is tied up. He's being beaten with a bat. He's being beaten with a statue. At some point his throat is slit. And while one defendant is beating him, another defendant is rummaging the room looking for money, looking for drugs, looking for his guitars. These actions are taking place simultaneously. This is the classic felony murder where the murder and the robbery are taking place at the same time. So the fact that the jury made this finding as to the armed robbery not only lets us know that certainly if they had been asked they would have made this finding as to the murder. It also lets us know that the murder that took place at the same time was also brutal and heinous and indicative of wanton cruelty. We can also look at the specific findings that were made by the court at the time of sentencing. And this is the trial court. He starts out his remarks by saying this was a brutal and heinous murder beyond anyone's imagination or even capacity to understand. And he goes on with his findings and then he returns to it talking about this was a terrible, terrible way to die. This is horrible. And that finding by the court, again, would allow for an independent valid basis under 8181B for the defendant's natural life sentence. And in our brief we cited to you the cases of People v. Simmons and People v. Prespo where similarly after a jury trial the trial court made an independent finding that the murder that had taken place was brutal and heinous, even though the jury had not made that specific finding. And in Prespo, which was a Supreme Court case, and in Simmons, which was a second district case, those extended sentences were upheld, notwithstanding any Apprendi issue, because the court found, first of all, that the facts of the case certainly supported such a finding. And second, that there was evidence in the record that the jury certainly would have agreed with that finding of brutal and heinous. And here, of course, there's even less question that the jury would have agreed with that finding of brutal and heinous where we already have the finding that the armed robbery was brutal and heinous. The second thing that I would say to this court as far as why this sentence isn't void is because at the time that the sentence was imposed, it was not a verdict. Bailey added something that was not in Smith, and what Bailey added was the fact that the felony murder verdict had to be interpreted as an implied acquittal of the other two types of murder. And before Bailey, that language and that analysis did not exist. That was not in Smith. And in fact, before Bailey, there was case law almost exactly to the opposite, which told us that where there was a general verdict form, that we should assume that the conviction was on the highest form of murder. So, I'm sorry, before Smith, there was case law that told us that we should assume that the conviction was on the highest form of murder. That's what Smith told us. But Bailey added to that and said, not only do we have to assume that the conviction is for felony murder only, we have to assume that there's an implied acquittal on the other two. But before that, and we can see this from the court's analysis in the appellate court version of this case, that implied acquittal was not there. So the court, in looking at the natural life sentence, in this case on direct appeal, said, well, the trial court here found that he committed these acts with the intent to commit with the knowledge that there was a strong probability that he was committing acts that would lead to death or great bodily harm. So we're affirming this natural life sentence. So clearly, Bailey changed something after the appeal in this case was completed. And so for that reason, at the time the sentence was entered, it was not void. Yeah, but does that matter? I mean, in Illinois, we have this whole void ab initio thing that's running around in the courts. And we're wrestling right now with regard to the UUW statutes. Just because something later becomes void doesn't mean it wasn't void back when it was first considered. I mean, if it's void, it's void. And Illinois considers it to be void ab initio. So we look backwards. The gun cases are all going out because it was not at the time the trial court had the cases, but the later courts decided that this is violation, it's violative of the Second Amendment. So it doesn't matter that at the time it was in the trial court it wasn't void. I mean, that might have something to do with ineffective assistance of counsel, but I'm not sure that that voidness issue is resolved by that. Well, and there's also an argument to be made that a judgment can only be considered void where the court lacks jurisdiction. And of course, in this case, the court did not lack jurisdiction. So at most, the sentence in this case would be voidable. But either way, this court really doesn't need to be concerned with the voidness issue of it because there is the valid basis for the sentence based on the two findings that the acts in this case were committed in a brutal and heinous fashion. Do we have, do we, well, obviously, for the same reason that you said that the State didn't have an impetus to ask for that finding at the time because of the situation with regard to what was going on with the case, the court didn't have the impetus to make that finding either, right, the brutal and heinous finding with regard to the murder because it was another aggravating factor that he was relying, that the court was relying on. Do we have the authority, do we have the authority to remand it to Judge Porter and see if he wants to make that finding? I would say that he already made the finding during the course of the case. Well, but he never said I'm finding the defendant's eligible for the death penalty based on the heinous and brutal factor. He never said that. Well, it would be for the natural, the extended natural life sentence. And no, he didn't specifically tie it into that. But it's, in that regard, it's just like Crespo and Simmons where the court, the court's comment was this was a brutal and heinous murder and it wasn't, this is a brutal and heinous murder and pursuant to 8-1-A1B, I'm giving this defendant an extended sentence of 80 years. So I don't know, I don't think that there's any specific requirement that the court necessarily is as specific as you're saying that the court can find a valid basis for the natural life sentence based on the comments of the court. And I'd also point out that this is consistent with Bailey. In Bailey, the state argued that because another factor on which they were relying in asking for the death penalty was that the victim was over the age of 60 and the murder was committed in a brutal and heinous fashion, that the victim was still eligible for either the death penalty or a sentence of natural life. And what the court in Bailey said is that would be a legitimate basis for imposing a natural life sentence. But in Bailey, the court found that they couldn't do it because there was nothing in the record that they could look to to support that finding. But they did indicate that that was a valid basis. And in this case, we have exactly what was lacking in Bailey. We have places where this court can look to the record and see that not only the jury but also the trial court saw that the acts were committed in a brutal and a heinous fashion. Following up on Justice Palmer's questions, with regards to criminal convictions, do we have to be concerned about the finality of criminal convictions here? Yes. And I mean, the case law, there's tons of case law that says exactly just that, that there is an interest, a legitimate interest in the finality of criminal convictions. And what would you point to us in terms of the case law? I believe that I did cite a case in my brief for that proposition. I do apologize off the top of my head. I have a lot of cases in here, but that's not one of them. Okay. All right. And then the other question I had was with regards to the issues that were raised on this appeal. Were they not the same issues that were raised on direct appeal? And if so, then aren't we dealing with rest judicata here? There are some similar issues that were raised here. The defendant did challenge his natural life sentence on appeal. I would acknowledge that in this case, he has framed it in terms of the ineffectiveness of his appellate counsel. But if you're looking at it in terms of counsel's alternative argument, which is the voidness of his sentence, then yes, rest judicata could apply. Okay. Thank you. All right. Anything else was coming? Your Honor, for those reasons and for those in the people's brief, we would ask you to affirm defendant's sentence. Thank you. Thank you. Ms. Lambros. I'm not really sure where to start because counsel just completely undone Bailey, which is personal to me because I was a lawyer in Bailey. So this is exactly what the state argued and lost in the Illinois Supreme Court in Bailey. Bailey said, reaffirm the holding of Smith. That's all it did. It didn't change anything. It didn't make any new law. It just, quote, reaffirmed the holding in Smith and applied it to capital sentencing procedures. That's all that it did. And the court again in Bailey said, they noted that with regard to Smith's application to capital sentencing, we had explicitly anticipated the situation in Smith in 2009. This is just an extension of the Smith doctrine that was in 2009. This is nothing new. This is not a brand new argument that we're raising here. Number two, this court can't find that the murder was committed under a state's fashion. This is identical to what the state argued in Bailey. Here what we have is Judge Porter and this court found in its direct appeal opinion that the only way that Mr. Reed was eligible for a natural life sentence was because of his death penalty eligibility. So the state's asking you to undo your own law of the case when you found he was eligible for the death penalty and that's the reason for his natural life sentence. Number one. Number two, Judge Porter did not find that the murder was accompanied by brutal and heinous behavior. The Illinois Supreme Court in addressing an identical argument said, we will not accept the state's invitation to engage in our own assessment of the facts and determine whether a natural life sentence is proper, which is exactly what they're asking you to do again in Mr. Reed's case. This is identical to Mr. Bailey with the exception of we're here on post-conviction review and we're not on direct appeal. As far as the Rocheet Akata question, what was Rocheet... The state just argued that it's a little bit stronger than asking us to make our own assessment of the facts because Ms. Kelly just told us that actually those findings were made. Those findings were made by the jury and also by the judge in his remarks concerning the nature of the crime, or at least as far as the armed robbery goes, which was intertwined with the murder. Well, the judge couldn't have made those findings at sentencing because the moment that the Smith error occurred, he was acquitted of intentional or knowing murder. The judge could not have made those findings. Reading Bailey in conjunction with Smith and Beck and Bullington, which is what our Illinois Supreme Court tells us to do, Mr. Reed has been acquitted of intentional or knowing murder. So he could not have gone and the court could not have made those findings, and the court didn't. This court has already found that he did not make those findings. For this court to re-examine its own interpretation of the facts from 2010 is exactly what the state's asking them to do, to undo your own law of the case. The only eligibility factor he was found guilty under was under the B6. That's the only way he was eligible for a naturalized sentence. There was no harmless error question in the Smith-Titus error. The Illinois Supreme Court has been very clear. There is no harmless error question. This court can't re-review the record and say, well, we think he should have been eligible otherwise. That's not proper. This has already been done by Smith and already been done by Bailey. We are in the exact same situation. The state should have instructed the jury. The state should have requested he be also in not only the death penalty, but also requested that he be sentenced to natural life based on intentional or knowing murder. Brutal and heinous. But they didn't do that. And they can't do it now. Again, this is exactly what we argued in Bailey. Just briefly, I would suggest that this court follow Justice Gordon's dissent in Cole as far as regarding whether or not things are specifically put in the petition. What's interesting about Cole is that the petitioner didn't advance any ineffective assistance of counsel arguments. All the petitioner did was allege a trial court error and the prosecutorial misconduct error. Here, Mr. Reed alleged ineffective assistance of trial counsel and ineffective assistance of appellate counsel. If there's no further questions. Thank you very much. All right. Thank you very much. The court appreciates the excellent presentation we've heard today and the excellent briefing. We will take the matter under advisement. Court is adjourned.